NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ERIKA LEVINSON and MARIA WATKINS, individually and on behalf of all others similarly situated, | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | **OPINION** |
| v. | Civil Action No. 09-CV-3317 (DMC) |
| JOHNSON & JOHNSON CONSUMER COMPANIES, INC. and WAL-MART STORES, INC., |  |
| Defendants. |  |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Johnson & Johnson Consumer Companies, Inc. and Wal-Mart Stores, Inc. ("Defendants") to dismiss the complaint of Erika Levinson and Maria Watkins, individually and on behalf of all others similarly situated, ("Plaintiffs") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for lack of subject matter jurisdiction pursuant to Fed. R. Civ. 12(b)(1). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of all parties, it is the decision of this Court for the reasons herein expressed that Defendants' motion to dismiss is **granted in part** and **denied in part**.

**I   BACKGROUND**

The Amended Class Action Complaint is brought individually and behalf of all class purchasers ("Class Members") against Johnson & Johnson Consumer Companies, Inc. ("J&J") and

Wal-Mart Stores, Inc. ("Wal-Mart") (collectively "Defendants") . Plaintiffs allege that J&J's Baby Shampoo and Wal-Mart's Equate Tearless Baby Wash include and consequently, exposed Plaintiffs' children to "toxic and potentially cancer-causing chemicals[,]" including methylene chloride, an ingredient banned [for use in cosmetics] by the Food and Drug Administration ("FDA"), 1,4-dioxane and formaldehyde." (See Plaintiffs' Complaint ("Pl. Compl."), ¶ 3). "Along with increased risk of cancer, skin irritation and other serious health problems, chronic exposure to low levels of chemicals can lead to asthma and hypersensitivity in children." (Pl. Compl., ¶ 38).

"Independent Lab Tests found methylene chloride levels [between .35 ppm and] 1.1 ppm, 1,4-dioxane levels [between 20 ppm and] 38 ppm, and formaldehyde levels of [between 150 and 230] ppm" in J&J Baby Shampoo. (Pl. Compl., ¶ 43). The chemicals are allegedly not disclosed on the J&J label. (Pl. Compl., ¶ 44). "Independent Lab Tests of Equate Tearless Baby Wash revealed methylene chloride levels of 0.57 ppm, 1,4-dioxane levels of 39 ppm and formaldehyde levels of 360 ppm." (Pl. Compl., ¶ 11).

"Plaintiffs and the Class Members were damaged by Defendants' omissions and failure to warn that their Children's Personal Care Products were contaminated with toxic and potentially cancer-causing chemicals." (Pl. Compl., ¶ 4). The J&J Baby Shampoo contains descriptive messages, such as "as gentle to the eyes as pure water[,]" "Ultra Mild" and "Hypoallergenic" and "rinses clean . . . gentle enough even for newborns." (Pl. Compl., ¶ 13). Wal-Mart's Equate Tearless Baby Wash contains descriptive messages, such as "an extra mild . . . cleanser that won't sting baby's eyes," "rinses completely," and is a "hypoallergenic formula." (Pl. Compl., ¶ 51). Plaintiffs assert that the offensive chemicals could have been removed by a process called "vacuum stripping." (Pl. Compl., ¶ 14). Lastly, Plaintiffs remark that children are especially vulnerable and susceptible to the

chemicals in question. (Pl. Compl., ¶ ¶ 35-38).

Count I of the complaint asserts a claim for breach of implied warranty pursuant to the Uniform Commercial Code ("UCC") § 2-314. (Pl. Compl. at 71). Count II of the complaint asserts a claim for breach of implied warranties of merchantability and fitness for a particular use. (Pl. Compl., ¶ 83). Count III of the complaint asserts a claim for unfair and deceptive trade practices. (Pl. Compl., ¶ 90). Count IV of the complaint asserts a claim for unjust enrichment. (Pl. Compl., ¶ 98).

## II.     STANDARD OF REVIEW

"There is a fundamental difference of review  under Rule 12(b)(1), where the existence of disputed facts will not preclude the court from evaluating the merits of the jurisdictional claim, and Rule 12(b)(6) where the court is required to accept as true all the allegations of the complaint and all inferences arising from them." Anjelino v. New York, 200 F.3d 73, 87 (3d Cir. 1999). "[T]he threshold to withstand a motion to dismiss under [Rule] 12(b)(1) is thus lower than that required to withstand a Rule 12(b)(6) motion." Kehr Packages Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

### A.     Fed. R. Civ. P. 12(b)(6)

"The [d]istrict [c]ourt, in deciding a motion under Fed. R. Civ. P. 12(b)(6), [is] required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly,  550 U.S. 544, 555 (2007). "[A court is]

not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).  "Factual allegations must be enough to raise a right to relief above a speculative level, [ ] on the assumption that all factual allegations in the complaint are true (even if doubtful in fact)." Bell, 550 U.S. at 555-56.

    B.    Fed. R. Civ. P. 12(b)(1)

"On a Rule 12(b)(1) motion, no presumption of truthfulness attaches to the allegations of the plaintiff." CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008).  A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." Id. (citing U.S. ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007)).

**III.**     D<small>ISCUSSION</small>

    A.    Standing

To bring a suit in a federal court, the plaintiff must have standing pursuant to Article III of the United States Constitution.  To establish standing under Article III, the plaintiff must show: (1) injury in fact; (2) causation; and (3) redressability.  Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 455 (3d Cir. 2003); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

> First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Id. (citing AT&T Communications of N.J., Inc.v. Verizon N.J., Inc., 270 F.3d 162, 170 (3d Cir.

2001)). "The injury must affect the plaintiff in a personal and individual way." Pitt News v. Fisher, 215 F.3d 354 (3d Cir. 2000); Alston v. Countrywide Fin. Corp., 585 F.3d 753, 763 (3d Cir. 2009).

"[O]rdinarily, one may not claim standing .... to vindicate the constitutional rights of some third party." Pitt, 215 at 362. "We apply this prudential rule against third party standing even when the requirements of Article III have been met, to 'avoid deciding questions of broad social import . . . [and] to limit access to the federal courts to those litigants best suited to assert a particular claim.'" Id. (citing Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99-100 (1979)). "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." Berg v. Obama, 586 F.3d 234, 239 (2009) (citing Warth v. Seldin, 422 U.S. 490, 499 (1975)). Furthermore, "[t]he standing inquiry does not change in the context of a putative class action….[S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action." Koronthaly v. L'Oreal, 2008 U.S. Dist. LEXIS 59024, *12 (D.N.J. July 25, 2008).

As a threshold matter, Defendants contend that Plaintiffs lack standing to sue in the instant action given that Plaintiffs failed to allege an injury-in-fact or that the product failed to perform the hair-cleansing benefits for which it was sold. Moreover, in reliance upon this Court's decision in Koronthaly, Defendants assert that Plaintiffs' demand for a refund of the purchase price as a consequence of exposure to Defendants' products fails to establish an injury-in-fact and therefore, is not sufficient to confer standing where the alleged harm is no more than speculative. As a result, Defendants claim that the absence of a cognizable injury and thereby standing in this matter requires dismissal pursuant to Fed. R. Civ. P. 12(b)(1).

In response, Plaintiffs contend that economic injury is sufficient to confer standing in this matter, relying upon Clinton v. City of New York, 524 U.S. 417 (1998) and Danvers Motor Co. v. Ford Motor Co., 432 F.3d 286 (3d Cir. 2005). Plaintiffs contend that where the product contains undisclosed toxins and an ingredient banned by the FDA, the injury arises at the time of purchase. In distinguishing the Koronthaly v. L'Oreal case, citing to this Court's disposition on a motion for reconsideration, Plaintiffs assert that unlike Koronthaly where this Court determined that plaintiff "provided no authoritative evidence that the lead levels in defendants' lipstick products constitute[d] a dangerous amount or [were] in some way prohibited[,]" the present action involves methylene chloride, a substance banned by the FDA for use in cosmetics. 2008 U.S. Dist. LEXIS 86419, *11 (D.N.J. Oct. 24, 2008). Further, Plaintiffs contend that the Environment Protection Agency ("EPA") classifies the other chemicals at issue as probable carcinogens. Lastly, Plaintiffs assert that their claims should stand because Plaintiffs have at least raised an issue of fact with respect to whether the chemicals contained in Defendants' products are dangerous in amount.

The Koronthaly case involved the purchase of a lipstick containing lead, the content of which was not subject to FDA regulation. Id. at *2-3. However, the lead content of the lipstick appeared dangerous when compared to the lead content regulation imposed by the FDA on candy. Id. In the absence of an FDA regulation concerning lead content in lipstick, or other legal prohibition, the plaintiff could not "seek a remedy for a harm that she ha[d] not actually or allegedly suffered." Moreover, this Court accorded great weight to the decision in Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171 (D.D.C. 2003), concluding that the "plaintiffs' allegation of an economic injury in a products liability action was insufficient to establish injury-in-fact" because "without alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has

6

no basis to recover purchase costs." Id. at *13-14. Therefore, the Williams Court "remarked that benefit of the bargain injury could not sustain a claim of injury in fact." Id.

"The term 'cosmetic' means (1) articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance, and (2) articles intended for use as a component of any such articles; except that such term shall not include soap." 21 U.S.C. § 321(i). "In its definition of the term 'cosmetic,' the Federal Food, Drug, and Cosmetic Act specifically excludes soap. The term 'soap' is nowhere defined in the act. In administering the act, the Food and Drug Administration interprets the term 'soap' to apply only to articles that meet the following conditions:"

> (1) The bulk of the nonvolatile matter in the product consists of an alkali salt of fatty acids and the detergent properties of the article are due to the alkali-fatty acid compounds; and
>
> (2) The product is labeled, sold, and represented only as soap.

21 § C.F.R. 701.20. Plaintiff asserts and Defendants do not appear to dispute that the Baby Shampoo is classified as a cosmetic rather than soap. Therefore, the allegedly defective products will be treated as a cosmetics subject to the FDA regulation banning methylene chloride.

While the Court agrees that the assertion of an economic injury is not an automatic bar to standing, Koronthaly demonstrates that an exception has been recognized in the context of claims concerning defective products, absent a specific legal prohibition precluding particular ingredients or usages. Insofar as Plaintiffs claims pertain to allegedly toxic chemicals that have not been banned by the FDA for use in cosmetics, including 1,4-dioxane and formaldehyde, in accordance with

7

Koronthaly, this Court concludes that any potential injury is too remote, hypothetical and/or conjectural to establish standing in this matter. However, insofar as Plaintiffs claims pertain to methylene chloride, a chemical explicitly banned for use by the FDA in any cosmetic, this Court declines to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing.

      B.      Choice of Law

As a federal district court sitting in diversity, this Court must apply the choice of law rules of New Jersey, the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). New Jersey's choice of law rules mandate that the determinative law is that of the state with the greatest interest in governing the particular issue. The first step is to determine whether a conflict exists between the law of interested states, and then any conflict shall be determined on an issue-by-issue basis. "Under general conflict of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a "false conflict," and the Court should avoid the choice-of-law question." Williams v. Stone, 109 F.3d 890, 894 (3d Cir. 1997). If there is a conflict, then the Court must identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation. If the state's law is not related to its contacts with the litigation, then the state does not have an interest in having its law applied to the underlying issue. See Vezey v. Doremus, 510 A.2d 1187, 1189 (N.J.1986). That is, if there is an actual conflict between the two states' laws, the court then determines "which state has the most meaningful connections with and interests in the transaction and the parties." Spence-Parker v. Del. Riv. & Bay Authority, 2009 U.S. Dist. LEXIS 75187, *20 (D.N.J. Aug. 21, 2009). Where no actual conflict of law exists, no choice of law need be made. See Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 333 (D.N.J. 2005). "If there is no actual conflict, the Court must

8

apply the law of New Jersey." LNT Merck Co. v. Dyson, Inc., 2009 U.S. Dist. LEXIS 62308, *6 (D.N.J. July 21, 2009) (citing Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006)). In that instance, a motion to dismiss under Fed. R. Civ. P. 2(b)(6) should be decided under New Jersey law. See Gallerstein v. Berkshire Life Ins. Co. of America, 2006 U.S. Dist. LEXIS 64487, *3 (D.N.J. Sept. 11, 2006).

The parties' respective moving papers recognize that the outcome is the same regardless of whether New Jersey State Law or Missouri State Law is applied to this diversity action. Therefore, the parties assert that no conflict of laws issue is present in the instant matter.

C.      New Jersey State Law Breach of Warranty, Consumer Fraud and Unjust
        Enrichment Claims

Defendants assert that dismissal is required with respect to all Plaintiffs' claims because the claims are based on alleged harm caused by a product and as a consequence, are subsumed by the New Jersey Product Liability Act ("PLA"). Plaintiffs contend that the PLA does not apply because their claims are essentially classic breach of warranty and consumer fraud causes of action. Plaintiffs argue that "[w]hile the PLA covers and subsumes causes of action involving physical harms caused by a product, the [Consumer Fraud Act ("CFA")] and other remedies remain available when the plaintiffs only claim economic injuries involving a product." (Pl. Br. at 18). Further, Plaintiffs argue that the PLA does not apply because Plaintiffs do not assert themselves as "claimants" or allege "harm" as defined by the PLA.

The New Jersey Supreme Court decision in Sinclair v. Merck & Co. is instructive. In Sinclair v. Merck & Co., the Plaintiffs "alleged that as a result of their direct and prolonged

9

consumption of Vioxx, they are at enhanced risk of serious undiagnosed and unrecognized myocardial infarction, commonly referred to as "silent heart attack," and other latent and unrecognized injuries." 195 N.J. 51, 55 (2008). In that case, the plaintiffs asserted claims for negligence, violation of the Product Liability Act, violation of the Consumer Fraud Act, breach of express and implied warranties and unjust enrichment. Id. In dismissing the complaint in its entirety, New Jersey Supreme Court determined the following,

> [p]laintiffs seek to avoid the requirements of the PLA by asserting their claims as CFA claims. However, the Legislature expressly provided in the PLA that claims for "harm caused by a product" are governed by the PLA "irrespective of the theory underlying the claim." N.J.S.A. 2A:58C-1b(3). We explained in Lead Paint, supra, that "[t]he language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action in relating to harms caused by consumer and other products." 191 N.J. at 436-37. As a result, we declared that "[i]n light of the clear intention of our Legislature to include all [product liability] claims within the scope of the PLA, we find no ground on which to conclude that the claims being raised by plaintiffs, regarding an ordinary household product used by consumers, were excluded from the scope of" the PLA. We reach the same conclusion here.
>
> The language of the PLA represents a clear legislative intent that, despite the broad reach we give to the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product. The heart of plaintiffs' case is the potential for harm caused by Merck's drug. It is obviously a product liability claim. Plaintiffs' CFA claim does not fall within an exception to the PLA, but rather clearly falls within its scope. Consequently, plaintiffs may not maintain a CFA claim.

Id.[1][2]

---

[1] Although this Court permitted the CFA claims to proceed in Nafar v. Hollywood Tanning Sys., Inc., in that case, the Plaintiff's claims and basis for distinction of the CFA from the PLA was the purchase of services, rather than the purchase of a defective product. 2007 U.S. Dist. LEXIS 26312, *12-14 (D.N.J. Apr. 5, 2007). CFA claims rooted in services are clearly distinguishable from claims grounded in products. The present action does not involve a claim for defective services.

[2] Further, Plaintiffs misconstrue In re Ford Motor Co. E-350 Van Products, 2008 U.S. Dist. LEXIS 73690, *48 n.9 (D.N.J. Sept. 3, 2008), where the Court did indeed find the Sinclair case "inapposite" "because, by design, the PLA 'except[s] actions for harm caused by breach of an express warranty[,]' which plaintiffs expressly allege[d.]" On the basis

Similarly, at the heart of this matter is the potential for harm caused by the defective products, J&J Baby Shampoo and Wal-Mart Equate Tearless Baby Wash, containing allegedly "toxic chemicals linked to increased cancer risk, adverse skin reactions, and other serious health problems." (See Pl. Compl., ¶ 2). Plaintiffs directly assert that they "were damaged by Defendants' omissions and failure to warn that their Children's Personal Care Products were contaminated with toxic and potentially cancer-causing chemicals." (Pl. Compl., ¶ 4). Therefore, consistent with the Sinclair decision, this Court concludes that the PLA subsumes all of Plaintiffs' claims, effectively precluding Plaintiffs' claims with respect to the CFA, and otherwise, in the absence of "harm" as defined by the PLA. The Court does not agree that articulating a claim in terms of pure economic harm where the core issue is the potential injury arising as a consequence of the products' allegedly harmful chemicals converts the underlying defective product claim into an independent and unrelated consumer fraud issue. Limiting a claim to economic injury and the remedy sought to economic loss cannot be used to obviate the PLA.

The assertion of a claim pursuant to the PLA is premised upon a requisite level of harm, including:

> (a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph.

N.J.S.A. 2A:58C-1b(2). Harm, for purposes of the PLA, does not include pure economic loss. Insofar as Plaintiffs concede that their injury is purely economic, Plaintiffs' claims cannot survive. Therefore, with respect to New Jersey law, in accordance with Sinclair, Plaintiffs' complaint is

---

of an express warranty, the Court concluded that Sinclair decision "does not mandate dismissal of unjust enrichment and state consumer fraud claims where a party does not plead a PLA claim." Id.(internal citations omitted). Plaintiffs do not assert a claim for breach of an express warranty in the present action.

dismissed without prejudice in its entirety.

    D.    Missouri State Law Breach of Warranty, Consumer Fraud and Unjust Enrichment Claims

Despite the parties' respective beliefs that there is no conflict of law issue present in the instant matter, it is not clear to the Court that product liability laws of Missouri subsume related claims in the same manner as the New Jersey PLA. Therefore, upon dismissal of all New Jersey State Law claims and for purposes of inclusion, the Court will proceed by addressing the viability of Plaintiffs' claims under Missouri State Law. If Plaintiffs have asserted viable claims pursuant to Missouri State Law, then a conflict of law exists and the Court will undertake to ascertain which state has the superior interest in the litigation.

    i.    Consumer Fraud

Defendants contend that Plaintiffs have no viable claims pursuant to Missouri State Law because Plaintiffs fail to allege any non-speculative, ascertainable loss and fail to plead their claims with particularity in accordance with Fed. R. Civ. P. 9(b). Plaintiffs assert that they "suffered ascertainable losses to the extent that they paid for and got something less than what was promised" and to the extent that Defendants engaged in material omissions of fact with respect to the presence of toxic chemicals in the products at issue. (Pl. Br. at 29, 33). Plaintiffs also present the Court with the results of independent lab tests detecting the presence of methylene chloride in the allegedly defective products.

"A party must plead the circumstances of each element of fraud with particularity." Owen v. GMC, 533 F.3d 913, 921 (8th Cir. 2008); Fed. R. Civ. P. 9(b). "Although the [Missouri

Merchandising Practices Act ("MMPA")] does not sound in tort and does not require a showing of a product defect as a matter of course, the plain language of the MMPA demands a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice." Id. at 922. However, if "the alleged unfair practice is the failure to disclose a product defect, there must be a showing that the [product] in fact suffered that defect, or evidence from which the defect reasonably could be inferred, in order to demonstrate an ascertainable loss *as a result of* [defendant]'s failure to disclose the defect." Id. at 923. "The MMPA prohibits "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce" by defining such activity as an unlawful practice." Plubell v. Merck & Co., 289 S.W.3d 707, 711 (Mo. App. S.D. 2009) (citing Mo. Ann. Stat. § 407.020). "Civil actions may be brought under the MMPA to recover actual damages by '[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of [an unlawful practice].'" Id. (citing Mo. Ann. Stat. § 407.025.1). "The MMPA also specifically authorizes class actions where an unlawful practice 'has caused similar injury to numerous other persons.'" Id. (citing Mo. Ann. Stat. § 407.025.2). To the extent that Plaintiffs' claims pursuant to Missouri State Law concern methylene chloride, a chemical banned by the FDA for use in cosmetics and detected in Defendants' products, Plaintiffs claims may proceed under Missouri State Law.

Although foreclosed by application of the PLA in the instant case, the CFA was enacted to "protect the consumer against imposition and loss as a result of fraud and fraudulent practices by persons engaged in the sale of goods and services." Smith v. Alza, 400 N.J. Super. 529, 552 (2008).

13

"The MMPA was enacted to preserve fundamental honesty, fair play, and right dealings in public transactions." Owen v. GMC, 533 F.3d 913, 922 (8th Cir. 2008) (citing Scott v. Blue Springs Ford Sales, Inc., 215 S.W.3d 145, 160 (Mo. Ct. App. 2006)). Beyond the underlying governmental purpose of the MMPA, the representative Plaintiffs in this action reside in Missouri and presumably, the purchases of the allegedly defective products occurred in Missouri. J&J is a New Jersey corporation engaged in business throughout the United States, including Missouri. Wal-Mart is an Arkansas corporation engaged in business throughout the United States, including Missouri. Therefore, the Missouri State contacts in the instant matter seem to outweigh New Jersey State contacts. Missouri State Law prevails with respect to this issue.

      ii.    Breach of Implied Warranty

Defendants assert that Plaintiffs' breach of implied warranty claims should be dismissed because Plaintiffs' complaint fails to allege that the products were not merchantable or failed to perform the function for which they were sold, and because the complaint fails to allege any purpose that is separate and apart from the ordinary purpose. (Def. Br. at 28-29). Plaintiffs' complaint asserts a claim for breach of implied warranties because the goods were allegedly not fit for their ordinary purpose or particular use on children and further, because the products fail to conform to the promises and representations made on the labels. Specifically, Plaintiffs allege that the products are not merchantable because they are contaminated with methylene chloride. (Pl. Br. at 36).

"In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained." Worthy v. Specialty Foam Products, 591 S.W.2d 145, 149 (Mo. App. S.D. 1979). "After establishing the existence of this warranty," there must be a

showing; "(1) that the implied warranty of merchantability had been broken, and (2) that the breach of this warranty was the proximate cause of its loss." Id. "Crucial to the issue of whether or not a seller has breached an implied warranty of merchantability, is the determination of whether or not the goods in question are merchantable." Id. "Merchantable goods must be at least as such as[:]"

> (a) pass without objection in the trade under the contract description; and
>
> (b) in the case of fungible goods, are of fair average quality within the description; and
>
> (c) are fit for the ordinary purposes for which such goods are used; and
>
> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
>
> (f) conform to the promises or affirmations of fact made on the container or label if any.

Mo. Ann. Stat. § 407.2-314. The Uniform Commercial Code ("UCC") limits the recovery of damages to those proximately caused by the breach of warranty and imposes an obligation on the buyer to minimize damages in good faith. Groppel Co. v. United States Gypsum Co., 616 S.W.2d 49, 59 n.11 (1981). Assuming, without concluding, that the descriptive messages on the alleged defective products constitute promises or affirmations, then, in accordance with the foregoing limitations, Plaintiffs' claims for breach of implied warranties pursuant to Missouri State Law are permitted to proceed.

Although foreclosed by application of the PLA in the instant matter, the underlying purpose of the UCC as recognized by the New Jersey Supreme Court, is "to simplify, clarify and modernize the law governing commercial transactions; to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and to make uniform the law among

various jurisdictions." N.J.S.A. 12A:1-102(1); Alloway v. General Marine Indus., L.P., 149 N.J. 620, 630 (1997). Codified under chapter 400 of Missouri State Law, Missouri State Law adheres to the same underlying purposes as New Jersey. See Excel Bank v. Nat'l Bank of Kansas City, 290 S.W.3d 801, 803-04 (Mo. App. W.D. 2009). Similar to the foregoing analysis, Missouri's contacts with the representative Plaintiffs and the transactions that are the source of the representative Plaintiffs' claims favors the application of Missouri law over New Jersey with respect to this issue.

        iii.        Unjust Enrichment

Defendants assert that unjust enrichment is not a proper remedy available in this case because Plaintiffs fail to assert that the products failed to perform. By contrast, Plaintiffs assert that they purchased the products conferring a monetary benefit upon the Defendants for useless products that they would not otherwise have purchase, but for the representations that the products were safe, gentle and/or mild. "The elements of a claim of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable." Mays-Maune & Co. v. Werner Bros., Inc., 139 S.W.3d 201, 205 (Mo. App. E.D. 2005). Equitable remedies are coercive remedies like declaratory judgments and injunctions, the latter of which includes specific performance and some types of restitution. State ex rel Leonardi v. Sherry, 137 S.W.3d 462, 470 (2004). "Damages and, in some instances, restitution constitute the legal remedies." Id. (internal citations omitted). Generally, equitable remedies are only available when there is a showing of irreparable injury and/or the absence of an adequate remedy at law. See State ex rel General Dynamics Corp. v. Luten, 566 S.W.2d 452, 461 (1978). "There is nothing more basic in law than the proposition that there is neither irreparable injury nor lack of an

adequate remedy at law when the only harm would be the payment of money, which clearly can be recovered if, in fact, the plaintiff succeeds on the merits of its claims . . . . [I]f plaintiff were to prevail, it would have a legal remedy that would allow it to recover any funds that, *arguendo*, were paid wrongfully." Shipley v. Cates, 200 S.W.3d 529, 541 (2006). Plaintiffs explicitly and exclusively allege economic injury. Therefore, there is no indication that a remedy at law would be inadequate. To the extent that Plaintiffs assert a claim for unjust enrichment pursuant to Missouri State Law, Plaintiffs' complaint is dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion is **granted in part** and **denied in part**. Plaintiff's complaint is **partially dismissed without prejudice** pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). An appropriate order accompanies this opinion.

|  |  |  |
|---|---|---|
|  |  | S.  Dennis M. Cavanaugh |
| Dated: | February  1 , 2010 | Dennis M. Cavanaugh, U.S.D.J. |
| cc: | All Counsel of Record |  |
|  | Hon. Mark Falk, U.S.M.J. |  |
|  | File |  |